UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

EUGENE MARTIN MCCUMONS,

          Plaintiff,

                                         Case Number 08-11164-BC
v.                                        Honorable Thomas L. Ludington

J. MAROUGI, CITY OF PONTIAC,
VALARD GROSS, DARRYL COSBY,
and DANIEL MARTIN,

          Defendants.

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO COMPEL

Plaintiff Eugene Martin McCumons contends in his complaint that Defendants' actions caused "intense mental anguish," "anxiety," and "emotional distress," creating the potential for an award of noneconomic damages and making the Plaintiff's mental condition an issue for the jury to consider. On December 23, 2008, pursuant to Defendants' request, Plaintiff was examined by psychiatrist Jeffrey A. Kezlarian, M.D. According to Dr. Kezlarian's report, Plaintiff is an "alert and pleasant man" who "evidences no diagnosable psychiatric illness" and has an "excellent" prognosis. [Dkt. # 65-2]. On March 25, 2009, Plaintiff's own examiner, psychologist Lauren Kachorek, Ph.D., conducted an examination. According to Dr. Kachorek's report, Plaintiff still experiences significant "distress" as a result of the 2008 incident at issue in this case. As a result of the incident, Plaintiff has "expressed suicidal intent," he has difficulty concentrating and processing information, and his "psychological reserves . . . are depleted," which makes it more difficult to cope with "subsequent life stressors." [Dkt. # 65-D]. Needless to say, the contrast between the competing reports is striking. Indeed, a brief review of the reports would suggest that

the only similarity is the patient's name.

After the parties exchanged their reports, Defendants' counsel requested additional data from Dr. Kachorek, Plaintiff's expert, in a August 18, 2009 letter.  [Dkt. # 56-C].  As the letter emphasizes, Dr. Kachorek is a psychologist, while Dr. Kezlarian is a psychiatrist.  Thus, Dr. Kezlarian relied on his examination of Plaintiff and Plaintiff's medical history to complete his report, but Dr. Kachorek also conducted a battery of tests, including the Minnesota Multiphasic Personality Inventory-II, a Rorschach test, and nearly a dozen others.  According to Defendants, Dr. Kezlarian does not routinely administer such tests, nor does he even know how to interpret their results.  Defendants requested Dr. Kachorek's raw data so that Defendants' newly retained psychological expert, Bradley Axelrod, Ph.D., could review the data and determine whether an additional examination was necessary.

Plaintiff refused to turn over Dr. Kachorek's data, and Defendants ultimately filed a motion to exclude Dr. Kachorek's testimony and report under Federal Rule of Civil Procedure 37. Defendants argued that Dr. Kachorek should not be permitted to testify because her Rule 26(a)(2) report did not include the "facts or data" that she relied upon in forming her opinion, specifically the test results.  Fed. R. Civ. P. 26(a)(2)(B)(ii).  The motion was referred to the Honorable Charles E. Binder, who agreed, in part, with Defendants.  Judge Binder issued an order on February 15, 2011 concluding that Dr. Kachorek should be permitted to testify, but only if she supplements her report with the "raw data" Defendant first requested eighteen months earlier.  Plaintiff did not appeal Judge Binder's order to this Court.

While the dispute about Dr. Kachorek's "raw data" was brewing, the discovery cutoff and expert disclosure dates were rapidly approaching.  On January 10, 2011, Defendants filed a Rule 35

-2-

notice, indicating their intention to have Dr. Axelrod examine Plaintiff on February 19, 2011.

Defendants argued that a psychological examination by Dr. Axelrod was necessary, at least in part,

because of Plaintiff's refusal to turn over Dr. Kachorek's data.  Plaintiff refused to be examined by

Dr. Axelrod, contending Defendants had not demonstrated "good cause" for a second medical

examination of Plaintiff.  On January 31, 2011, Plaintiff filed a motion to compel Plaintiff's

examination by Dr. Axelrod [Dkt. # 65].  For the reasons explained below, the motion will be

granted.

## I

Defendants motion requests that the Court order Plaintiff to undergo a psychological

examination by Dr. Axelrod pursuant to Federal Rule of Civil Procedure 35(a).  Rule 35(a) provides:

**(a) Order for an Examination.**

**(1) *In General*.**  The court where the action is pending may order a party
whose mental or physical condition—including blood group—is in
controversy to submit to a physical or mental examination by a suitably
licensed or certified examiner.  The court has the same authority to order a
party to produce for examination a person who is in its custody or under its
legal control.

**(2) *Motion and Notice; Contents of the Order*.**  The order:

**(A)** may be made only on motion for good cause and on notice to all
parties and the person to be examined; and

**(B)** must specify the time, place, manner, conditions, and scope of the
examination, as well as the person or persons who will perform it.

Fed. R. Civ. P. 35(a).  "Rule 35 . . . requires discriminating application by the trial judge" to ensure

that "the party requesting a mental or physical examination or examinations has adequately

demonstrated the existence of the Rule's requirements of 'in controversy' and 'good cause . . . .' "

*Schlagenhauf v. Holder*, 379 U.S. 104, 118–19 (1964).  "Good cause" means more than merely

"relevant," but there are nevertheless situations where the determination can be made on the pleadings alone. *Id.* A plaintiff who seeks damages for a "mental or physical injury places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury." *Id.* at 119

Defendants contend that there is good cause for an examination by Dr. Axelrod because it is necessary to rebut Dr. Kachorek's report, Plaintiff refused to share Dr. Kachorek's test results until ordered to do so by the Court, and Plaintiff has made his psychological well-being a significant issue in the case. Plaintiff responds that he voluntarily agreed to the examination by Dr. Kezlarian, even though he had no obligation to do so, and he does not believe there is good cause to subject him to a second examination because Defendants chose a psychiatrist and not a psychologist to conduct the first examination. Plaintiff emphasizes that a significant period of time has passed since the event at issue, the filing of the case, and even the earlier medical examinations. Plaintiff asserts that Defendants have not demonstrated "good cause" for continued delays and that their expert testimony concerning Plaintiff's mental condition should be limited to Dr. Kezlarian.

## II

As an initial matter, now that Dr. Kachorek's test data has been provided to Defendants, it is unclear whether additional testing is necessary at all. Defendants admit as much in their reply brief. However, assuming Defendants would still like a second examination, they have met their burden of demonstrating that Plaintiff's mental condition is "in controversy" and there is "good cause" for an examination by Dr. Axelrod. Fed. R. Civ. P. 35(a); *Schlagenhauf*, 379 U.S. at 119.

First, a review of the pleadings demonstrates that Plaintiff's primary damages, if any are awarded by the jury in this case, will be for emotional harm caused by the incident. It does not

appear there were any lost wages or physical injuries, and compensation associated with losing the use of his car while it was impounded will be minimal.  Accordingly, Plaintiff's mental condition and the relationship between his condition and the incident underlying this case are clearly "in controversy." *Schlagenhauf*, 379 U.S. at 119.

Second, the stark contrast between the completed reports alone constitutes "good cause" for Dr. Axelrod's examination.  It is remarkable that Dr. Kezlarian and Dr. Kachorek examined the same patient within a four month time period and reached such different conclusions.  Additional testing and examination may well help the jury make sense out of the differences in the reports.  Moreover, Plaintiff's longstanding refusal to turn over the "raw data," which is clearly required by the federal rules, Fed. R. Civ. P. 26(a)(2)(B)(ii), provides further support for Defendants' motion.  Plaintiff's complaints about the potential delay associated with another examination carry substantially less weight when one considers its cause: Defendants' initially requested Dr. Kachorek's data eighteen months ago, and it was only after Plaintiff had repeatedly refused to provide it that Defendants' sought an additional examination.

### III

Accordingly, it is **ORDERED** that Defendants' motion to compel [Dkt. # 65] is **GRANTED**.  Although the discovery cutoff date has passed, the parties should confer and schedule an examination by Dr. Axelrod as soon as possible, and if necessary, additional discovery that is directly related to the examination.  The current scheduling order will not be adjourned.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: April 7, 2011

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 7, 2011.

s/Tracy A. Jacobs
TRACY A. JACOBS